UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL JENSEN, ) | |
| ) | |
| Petitioner ) | |
| ) | |
| vs. ) | CAUSE NO. 3:05-CV-692 RM |
| ) | (Arising from 3:04-CR-3(01)RM) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent ) | |

OPINION AND ORDER

In this petition for relief under 28 U.S.C. § 2255, Michael Jensen contends he pleaded guilty because his attorney didn't know the law. Based on his attorney-induced misunderstanding of the law of constructive possession, Mr. Jensen says he believed he was guilty of the crime of possessing a firearm after conviction of a felony.

Police executing a search warrant at Mr. Jensen's residence — 1406 F Street in LaPorte — found a shotgun in a closet. The structure at 1406 F Street is (or once was) a duplex; Mr. Jensen and his wife leased both units.

Mr. Jensen says the shotgun was found in 1404 F Street, which wasn't the unit in which he and his family lived. The 1404 unit, he says, was occupied by Ryan Wilhelm. The shotgun belonged to Mr. Wilhelm, says Mr. Jensen, and Mr. Jensen did not know of its presence. Mr. Jensen says he explained all of this to his attorney, Kurt Earnst, but Mr. Earnst told him that under the law of constructive possession, all that mattered was that Mr. Jensen leased the

premises where the gun was located and Mr. Jensen could get to the shotgun. Based on this information, Mr. Jensen says he pleaded guilty. Now with a more accurate understanding of the law of constructive possession, Mr. Jensen seeks to set aside his conviction and sentence pursuant to 28 U.S.C. § 2255.

This aspect of Mr. Jensen's ineffective assistance of counsel claim relates to the negotiation of his plea agreement and his claim of innocence. "To prevail on his ineffective assistance claim, [Mr. Jensen] must demonstrate that his counsel's performance fell below an objective standard of reasonableness, and that '[t]he [alleged] deficient performance prejudiced the defense.' In order to satisfy the prejudice prong, [Mr. Jensen] must establish that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Taylor v. Bradley, 448 F.3d 942, 948 (7th Cir. 2006) (*quoting* Strickland v. Washington, 466 U.S. 668, 687-688 (1984)); *see also* Stanley v. Bartley, No. 06-2184, 2006 WL 2946441 (7th Cir. Oct. 17, 2006) ("[T]o show the requisite prejudice from incompetent representation, all Stanley had to show was, as the court earlier had correctly stated, 'a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different.'"). "Prejudice in the context of a guilty plea requires a showing that but for counsel's deficient performance, [Mr. Jensen] would not have pleaded guilty." Galbraith v. United States, 313 F.3d 1001, 1008 (7th Cir. 2002).

The starting point in deciding a petition to set aside a sentence and conviction based on a guilty plea is what the defendant said under oath at the

time of entering the guilty plea. *See* <u>United States v. Walker</u>, 447 F.3d 999, 1004-1005 (7th Cir. 2006) (motion to withdraw guilty plea: "we give great weight to what was said during the change-of-plea colloquy between the defendant and the judge"). With one exception, Mr. Jensen's testimony at the change of plea hearing is entirely consistent with an innocent man who was misinformed about the law. His testimony that he was satisfied with Mr. Earnst's work for him is perfectly consistent with not knowing until later that he had been given bad legal advice. His statement that he "possessed" the shotgun is entirely consistent with an understanding that if the gun was in a place he leased and could get access to, the law said he possessed it.

The only inconsistent aspect of Mr. Jensen's testimony at the change of plea hearing is found in the second answer quoted below (the first question and answer are included to provide appropriate context):

> THE COURT: Now, as I understand it, in Paragraph [9](b), you're telling me that certain facts are true. As I understand it, you're telling me that, on or about June 11th of 2003, in the Northern District of Indiana, LaPorte County police officers arrived at your house to search – to serve a search warrant on another matter. Do I understand that correctly?
>
> MR. JENSEN: Yes, Your Honor.
>
> THE COURT: And that, on that date, they found that you were in possession of a firearm, and you were possessing it knowingly. Do I understand that correctly?
>
> MR. JENSEN: Yes, Your Honor.

This inconsistency is significant: Mr. Jensen claims Mr. Earnst told him he possessed the firearm, but he doesn't claim Mr. Earnst told him he did so knowingly. Mr. Jensen claims he told Mr. Earnst from the outset that he didn't know the gun was in the apartment. Mr. Jensen's testimony at his change of plea hearing that he possessed the firearm knowingly, while consistent with a misunderstanding of the concept of "possession," is diametrically opposed to the proposition that he didn't know the gun was in the apartment.

Mr. Jensen presented Ryan Wilhelm as a witness, but Mr. Wilhelm has told too many stories for the court to credit his testimony. At the hearing, Mr. Wilhelm testified he didn't tell Mr. Jensen about the firearm, which he had buried beneath clothes in his closet. He also testified, though, that he already had the gun in the house when Mr. Jensen moved in, but all other testimony at the hearing indicates that Mr. Wilhelm sub-leased from the Jensens. Mr. Wilhelm also told a government agent that he hadn't known the gun was in the house; he denied ownership and responsibility for its presence. Further, despite Mr. Jensen's arrest for possession of the gun in January 2004, Mr. Wilhelm said nothing about his role until September 2005. Mr. Wilhelm offered several explanations for his various inconsistent statements and conduct, and no doubt each explanation has a basis in truth. But the court finds no credible testimony on this topic from Mr. Wilhelm.

Mr. Jensen testified he told Mr. Wilhelm that no firearms could be on the premises and Mr. Wilhelm assured him there would be none. Mr. Jensen testified

4

Mr. Wilhelm never told him the gun was there and he never saw it. Mr. Jensen testified he told Mr. Earnst he didn't know the gun was there, and Mr. Earnst told him that didn't matter, as long as Mr. Jensen could have gotten to the gun. Mr. Jensen said he wasn't paying attention at the change of plea hearing when the prosecutor explained the elements of the offense.

Mr. Jensen provided no explanation in his testimony for having told the court at his guilty plea that he possessed the firearm knowingly. When asked about this at the end of the hearing, Mr. Jensen's counsel speculated that Mr. Jensen, who has no legal education, may not have understood the meaning of the word "knowingly." Such an explanation would ring true with some defendants, but not with Mr. Jensen, who interrupted the prosecutor's cross-examination question at the hearing to tell her that his contention was "threefold."

Mr. Jensen also complains that Mr. Earnst misinformed him about the possible sentence for the crime. Mr. Jensen's prior residential burglary convictions, coupled with the Armed Career Criminal provisions of federal law, converted a 10-year maximum sentence into a 15-year minimum sentence. Mr. Jensen cannot show prejudice from that advice, though, because the court offered him an opportunity at sentencing to withdraw his guilty plea, and he declined to do so. He explained at the hearing that his rejection of the court's offer was because he was "dumbfounded" and he "froze." Those reasons provide no legal basis for a mulligan. Today's ruling turns entirely on the claimed wrong advice about lack of knowledge that the gun was on the premises.

5

Mr. Earnst testified at the hearing. His testimony was disappointingly thin. Mr. Earnst has practiced for ten years and does criminal defense work primarily in the state courts, where his experience includes a murder case. He testified he didn't remember Mr. Jensen denying knowledge of the gun's presence. He testified to having conducted some thirty minutes of research into the federal law on constructive possession. He could not define constructive possession from memory, had no specific memory of reviewing the factual basis for the plea with Mr. Jensen, and did not testify to what he told Mr. Jensen about constructive possession.

Although Mr. Earnst apparently still has his file on his representation of Mr. Jensen, he didn't bring it to court. The absence of the file, particularly in light of the testimony about research on the constructive possession issue, strikes the court as peculiar. The file would seem likely to contain contemporaneously-made information that could rebut much of Mr. Jensen's claims. If it did so, it is surprising that an attorney wouldn't bring his file to a hearing where charges concerning his professional performance would be at issue.

The file's absence, coupled with Mr. Earnst's inability to define constructive possession (or even to take a stab at it) at the hearing, causes the court a concern considerably greater than the troublesomeness of Mr. Jensen's statement about "knowingly" possessing the firearm. Mr. Earnst was unwilling, without looking at his research, to say at the hearing whether an ability to reach a firearm was, standing alone, enough to constitute constructive possession; given the nature of

the challenge to Mr. Earnst's performance, the court cannot comfortably find that Mr. Jensen was told he was not guilty if he didn't know the firearm was there.

Mr. Jensen has carried his burden of proving that his attorney led him to believe he could be guilty of possessing, as a felon, a firearm that he didn't know was there. His guilty plea provides ample prejudice to require the granting of his petition. Accordingly, the court GRANTS Michael Jensen's petition under 28 U.S.C. § 2255 to vacate his conviction and sentence. The conviction and sentence are VACATED. A scheduling conference will be noticed in a separate order.

SO ORDERED.

ENTERED:   November 3, 2006

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

cc:   M. Jensen
      D. Weisman
      L. Miller Lowery
      USM
      USPO